IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JEREL MCELROY                                                                    PLAINTIFF

v.                                      Case No. 4:24-cv-04102

WARDEN JOHN K. MINERS; MAJOR
VICKY WALKER; LIEUTENANT SHARITA
DEDMON; JOHN AND JANE DOE EMPLOYEES
OF THE SWACCC MEDICAL DEPARTMENT;
DISCIPLINARY HEARING COMMITTEE; and
TINDA HODGE                                                                      DEFENDANTS

## ORDER

Before the Court is a Report and Recommendation filed on January 6, 2025, by the

Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas.

(ECF No. 12). Judge Comstock conducted a preservice screening of Plaintiff Jerel McElroy's

second amended complaint and now recommends that the Court dismiss some of Plaintiff's claims

without prejudice pursuant to 28 U.S.C. § 1915A. Plaintiff has filed objections to the Report and

Recommendation. (ECF No. 16). The Court finds the matter ripe for consideration.

## I. BACKGROUND

Plaintiff filed this case on September 25, 2024, and his second amended complaint on

November 19, 2024. (ECF Nos. 1, 11). Plaintiff brings six claims, alleging that Defendants

violated his constitutional rights during his incarceration at the Southwest Arkansas Community

Correction Center ("SWACCC"). In short, Plaintiff alleges that Defendants denied him medical

care, read his legal mail, denied him access to the grievance process, placed him in segregation

without just cause, and exposed him to unconstitutional conditions of confinement, including

roaches, black mold, asbestos, ants, and feces. (ECF No. 11). Plaintiff sues all Defendants in their

official and individual capacities and seeks monetary and injunctive relief. (ECF No. 1, 11). Judge

Comstock conducted a preservice screening and now recommends that some of Plaintiff's claims be dismissed and that some proceed.  (ECF No. 12).

## II.  DISCUSSION

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1).  Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.1(VII)(C).  After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation."  *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018).  Generally, "objections must be timely and specific" to trigger *de novo* review.  *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990).  The Court applies a liberal construction when determining whether *pro se* objections are specific.  *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).  "When conducting a *de novo* review, the district court makes its own determinations of disputed issues and does not decide whether the magistrate's proposed findings are clearly erroneous."  *Branch v. Martin*, 886 F.2d 1043, 1045 (8th Cir. 1989) (citations omitted).  The Court finds that Plaintiff specifically objected to some, but not all, of Judge Comstock's recommendations.  The Court will conduct a *de novo* review of only the specifically objected to recommendations.

As stated above, Judge Comstock recommends that some of Plaintiff's claims proceed, and

2

some be dismissed.  The Court will separately address each recommendation below.

### A. Official Capacity Claims

Plaintiff asserts official capacity claims against all Defendants.  Judge Comstock recommends that Plaintiff's official capacity claims against Defendant Disciplinary Hearing Committee ("DHC") be dismissed because Defendant DHC is immune from suit under the Eleventh Amendment.  (ECF No. 12, at 7).  Judge Comstock also recommends that Plaintiff's official capacity claims for money damages against the remaining Defendants be dismissed because they are each alleged to be agents of the State of Arkansas.  *Id.*; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (barring § 1983 claims for monetary damages against state officials acting in their official capacities).  Plaintiff does not object to Judge Comstock's recommendations about these official capacity claims.  Thus, the Court reviews her recommendations for clear error.  Upon review, the Court finds no clear error and adopts Judge Comstock's recommendations that Plaintiff's official capacity claims against Defendant DHC and official capacity claims for money damages against all Defendants be dismissed.  The Court will consider Plaintiff's official capacity claims for prospective, injunctive relief against all Defendants, except Defendant DHC.  *See Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995) ("Ex parte Young recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law."); *see also 381 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (directing courts to consider whether the complaint alleges an ongoing violation of federal law and seeks prospective relief when determining whether the plaintiff is requesting prospective, injunctive relief).

### B. Claim One

In Claim One, Plaintiff asserts several constitutional violations against Defendant Miners.[1] (ECF No. 11, at 4).  Specifically, Plaintiff alleges that he was:

(1) exposed to unconstitutional conditions of confinement, including freezing cold showers, lack of toilet paper from August 30, 2024, to September 3, 2024, black mold, asbestos, a broken dishwasher and unwashed dishes, and a roach infestation;

(2) denied medical treatment for his UTI;

(3)  placed in segregation without just cause on July 9, 2024, and August 28, 2024;

(4)  exposed to unconstitutional conditions while in segregation because the segregation cell was covered in feces and infested with ants and because he was "locked down" for 24 hours a day without the ability to shower, make phone calls, or exercise;

(5) denied access to the administrative grievance process; and

(6) retaliated against by prison officials who placed him in segregation on June 7, 2024, for exercising his First Amendment right to free speech.  (ECF No. 11, at 4-9).

Plaintiff also alleges that Defendant Miners directed the notary (Ms. Armstrong) to read his legal mail. *Id.* at 5.  Plaintiff alleges that he sent a grievance request to Defendant Miners about his "safety and treatment from [the] staff" on October 25, 2024, but that Defendant Miners ignored his letter and told him to direct his complaints to the DHC.  *Id.*

### 1. Constitutional Claims

Judge Comstock found that Plaintiff failed to allege plausible constitutional violations against Defendant Miners.  First, Judge Comstock recommends dismissal of Plaintiff's claim that Defendant Miners unconstitutionally directed staff to read his legal mail because Plaintiff does not

---

[1] Plaintiff also names Defendant DHC in Claim One, however, the Court adopts Judge Comstock's recommendation that Defendant DHC be dismissed pursuant to the Eleventh Amendment.

allege that his legal mail was read outside of his presence or that his legal mail included mail from his attorney. (ECF No. 12, at 8). Plaintiff objects, arguing that his legal mail from courts *and* from his attorney were read before being delivered to him. (ECF No. 16, at 2-3). The Court finds Plaintiff's objections to be specific and will conduct a *de novo* review of this issue.

"Inmates have a First Amendment right of free speech to send and receive mail." *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). The Eighth Circuit has recognized that "[p]rivileged prisoner mail, that is mail to and from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)). Plaintiff asserts that Defendant Miners directed prison officials to start copying his legal mail, including from his attorney "*before* delivering it" to Plaintiff. (ECF No. 16, at 2-3) (emphasis added). The Court finds that Plaintiff has sufficiently stated a claim that his privileged legal mail from his attorney was opened outside of his presence. *See Beaulieu*, 690 F.3d at 1037. Accordingly, Plaintiff's legal mail claim may proceed.

Second, Judge Comstock recommends dismissal of Plaintiff's claim that Defendant Miners violated his constitutional rights by failing to provide him access to the prison's grievance forms because there is no constitutional right to a grievance process. (ECF No. 12, at 8). Plaintiff does not specifically object. Upon review, the Court finds no clear error with Judge Comstock's recommendation and adopts it. Accordingly, Plaintiff's claim that Defendant Miners failed to provide access to the grievance process is dismissed.

### 2. Individual Capacity Claims

Judge Comstock recommends that Plaintiff's individual capacity claims against Defendant Miners for his allegations in Claim One should be dismissed. *Id.* at 9.

Judge Comstock recommends dismissal because Plaintiff does not allege any facts showing that Defendant Miners was personally involved or responsible for the unconstitutional conditions in the jail and segregation cell, for placing Plaintiff in segregation without just cause, or for denying Plaintiff medical treatment for his UTI. *Id.* Judge Comstock also recommends dismissal because Plaintiff does not allege any facts suggesting that Defendant Miners failed to supervise or train his subordinates. *Id.*

In his objections, Plaintiff argues that Defendant Miners was "well aware of conduct from staff and had received notice of the pattern of unconstitutional acts committed by his subordinates" because Plaintiff had notified him of it in June when he requested to be transferred to a different facility. (ECF No. 16, at 3). Plaintiff also claims that Defendant Miners was "on notice of [Defendants] Dedmon, Walker, Hodge, [and DHC]'s unconstitutional conduct and violation of [Plaintiff's] due process rights" because Plaintiff submitted a grievance on that issue. *Id.* Plaintiff claims those due process violations included "deprivation, intimidation, abuse of authority, adding more time to incarceration sentence from false write ups, and good-time within the totality of the circumstances[.]" *Id.* Finally, Plaintiff claims that Defendant Miners knew of the conditions in Plaintiff's segregation cell and willfully disregarded them because Plaintiff expressed his concerns about the severity of the conditions to Defendant Miners during a walk through and in writing. *Id.* at 3-4. Plaintiff asserts that Defendant Miners acted as if he "couldn't be bothered" in response. *Id.* at 3. The Court finds that Plaintiff's objections are specific enough to warrant *de novo* review.

To establish liability against officials in their individual capacity, "the plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right." *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Thus, Plaintiff must allege not only that his rights were violated, but also that his rights

6

were violated *by* the named defendant. *Id.* It appears to the Court that Plaintiff named Defendant Miners because he held a supervisory role in the prison. A supervisor may be held liable for an Eighth Amendment violation "when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). "The supervisor must know about the conduct and facilitate it, prove it, condone it, or turn a blind eye for fear of what [he or she] might see." *Id.* (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)).

### i.  Conditions of Confinement

The Eighth Amendment prohibits "cruel and unusual punishments," and requires that prison officials provide humane conditions of confinement. *See* U.S. Const. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. However, the Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To state a plausible Eighth Amendment conditions-of-confinement claim, the inmate must first show that the alleged violation is "objectively and sufficiently serious." *Kulkay v. Roy*, 847 F.3d 637, 643 (2017). "An alleged violation is objectively and sufficiently serious when the inmate 'is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). Second, the inmate must show the defendant acted with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* (quoting *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007)).

Plaintiff alleges that he has been exposed to asbestos, black mold, dirty dishes (including "black molded trays"), freezing cold showers, and roaches in the general prison areas. (ECF No. 11, at 4-5). Plaintiff also alleges that he was confined in a segregation cell, which was infested with ants and covered in feces, without a break to shower, exercise or make phone calls. *Id.* at 4-6. In his objections, Plaintiff claims that he told Defendant Miners about the unsanitary conditions in his segregation cell during Defendant Miners' walk through and that Defendant Miners "acted as if he couldn't be bothered." (ECF No. 16, at 3). Plaintiff does not allege that Defendant Miners was directly involved in or caused the allegedly unconstitutional conditions of confinement, however, he claims that Defendant Miners was aware of the conditions in his segregation cell but did not correct them. *See Kulkay*, 847 F.3d at 642; *see also Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (explaining that exposure to the "presence of mold or another environmental allergen" may give rise to unsanitary prison conditions that violate an inmate's rights).

The Court finds that Plaintiff alleged enough facts to suggest that Defendant Miner was aware of and deliberately indifferent to the conditions in his segregation cell. *See id.; see also Boyd*, 47 F.3d at 969 (explaining that a supervisor incurs liability for an Eighth Amendment violation when they are personally involved in the violation or when their corrective inaction constitutes deliberate indifference toward the violation). Accordingly, the Court finds that Plaintiff's individual capacity claim against Defendant Miners for the conditions of his segregation cell may proceed.

### ii. Segregation without Just Cause

Plaintiff alleges that he was placed in administrative segregation for exercising his First Amendment rights. Specifically, he alleges that he was placed in segregation on June 7, 2024, for stating that he "doesn't clean no one's floor but his own," on July 9, 2024, for "not standing in

protocol," and on August 28, 2024, for asking an officer why she always targeted him and stating that he has a First Amendment right to ask questions. (ECF No. 11, at 6). In his objections, Plaintiff asserts that "Defendant Miners was on notice of Dedmon, Walker, Hodge, [and DHC]'s unconstitutional conduct and violation of [Plaintiff's] due process rights" because Plaintiff submitted a grievance "directly on this issue." (ECF No. 16, at 3). Plaintiff also asserts that this has been "a continuous pattern of ongoing violations." *Id.*

Plaintiff does not allege that Defendant Miners directly participated in violating his due process rights or retaliating against him for asking questions. Consequently, he may only be liable under § 1983 if his "failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 624 (8th Cir. 2021) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). As stated above, a supervisor may be held personally liable under § 1983 for "their own misconduct" or on a theory of failure to supervise or failure to train. *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). To establish liability on failure to supervise or train a subordinate, the plaintiff must show that the supervisor: "(1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Id.*

The plaintiff must allege that the supervisor was on notice of a pattern of unconstitutional conduct. *Id.* A "single incident, or a series of isolated incidents, is usually insufficient to infer a pattern." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018) (citing *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989)). Further, deliberate indifference is a subjective standard which "requires personal knowledge of the constitutional risk posed by inadequate supervision." *S.M. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017) (quoting *Krigbaum*, 808 F.3d at 341). Plaintiff must prove that the supervisor "***personally knew*** of the constitutional risk posed by [his]

9

inadequate training or supervision" of a subordinate." *Krigbaum*, 808 F.3d at 341 (emphasis in the original) (internal citations omitted). "To be deliberately indifferent, an 'official must both be aware of facts from which the inference could be drawn that a substantial risk of [unconstitutional] harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Court finds that Plaintiff's failure to supervise claim against Defendant Miners may proceed at this stage. Throughout his Amended Complaint and objections, Plaintiff alleges that he was placed in segregated confinement, where he was subjected to 24-hour lockdown conditions, by various prison officials at least six times. Plaintiff states that he was placed in segregation on June 7, 2024, June 11, 2024, July 9, 2024, August 28, 2024, September 5, 2024, and October 31, 2024, in violation of his due process rights and, at times, in retaliation for speaking and/or filing lawsuits. (ECF No. 11, at 22-23). Plaintiff alleges that he notified Defendant Miners of the prison officials'[2] conduct, which he calls a "continuous pattern of ongoing violations," because he submitted a grievance and written complaint to Defendant Miners "directly on this issue." (ECF No. 16, at 3). Accordingly, the Court finds that for the purpose of preservice review pursuant to 28 U.S.C. § 1915A(a), Plaintiff's failure to supervise claim against Defendant Miners may proceed.

### iii. Denial of Medical Care

Finally, Plaintiff alleges that his request for medical attention for a UTI was refused. (ECF No. 11, at 5). The Court finds that this individual capacity claim should be dismissed. Plaintiff does not allege that Defendant Miners personally denied him medical care, that Plaintiff was subjected to a pattern of denied medical care, or that Defendant Miners was aware of such a pattern.

---

[2] Specifically, Plaintiff claims that Defendant Miners was aware of the unconstitutional conduct of prison officials and Defendants Dedmon, Walker, and Hodge. (ECF No. 16, at 3).

10

*See Handt*, 681 F.3d at 943 ("To establish [individual capacity] liability, the plaintiff must show that the official, acting under color of state law, caused a deprivation of federal right."); *see also Krigbaum*, 808 F.3d at 340 (requiring that the plaintiff show that a supervisor received notice of a pattern of unconstitutional acts committed by a subordinate to establish a failure to supervise claim).

### 3. Official Capacity Claims

Judge Comstock recommends that Plaintiff's official capacity claims against Defendant Miners for the denial of medical care and lack of toilet paper between August 30, 2024, and September 3, 2024, be dismissed. (ECF No. 12, at 11-12). Judge Comstock recommends that Plaintiff's official capacity conditions of confinement claim, including continued exposure to black mold, asbestos, and bug infestations, against Defendant Miners proceed. *Id.* Plaintiff does not object to Judge Comstock's recommendations on his official capacity claims against Defendant Miners related to his first claim. Upon review, finding no clear error on the face of the record and that Judge Comstock's reasoning is sound, the Court adopts Judge Comstock's recommendations as to the official capacity claims of Claim One.

### C. Claim Two

In his second claim, Plaintiff names Defendants Walker, DHC, and Miners in their official and individual capacities.[3] (ECF No. 11, at 14). Plaintiff alleges that on June 7, 2024, at 7:30am, Defendant Walker called Plaintiff to the first floor to direct him to begin his work shift thirty minutes before it began. *Id.* at 10. Plaintiff alleges that he told Defendant Walker that he "doesn't clean, mop, [or] sweep anyone's floors with no money involved" before Defendant Walker could give him direct orders to do so. *Id.* Plaintiff also stated that he used to own a cleaning business so

---

[3] Having found that Plaintiff's claims against DHC should be dismissed pursuant to the Eleventh Amendment, the Court will not address Plaintiff's claims against DHC in Claim Two.

he "hires people and puts them to work." *Id.* at 11.  Plaintiff alleges that Defendant Walker "got mad" about that statement and ordered him to be placed in segregation.  *Id.*  Plaintiff claims that Defendant retaliated against him for exercising his First Amendment right to free speech by ordering him to segregation. Plaintiff further claims that he was placed in segregation without due process.  *Id.*  Plaintiff claims that during his stay in the segregation cell, he was placed on a 24-hour lockdown without a one-hour break to exercise, shower, or make phone calls.  *Id.*

### 1.  Individual Capacity Claims

Judge Comstock recommends that Plaintiff's individual capacity claims against Defendant Miners be dismissed because Plaintiff does not allege that Defendant Miners was directly involved in placing Plaintiff in segregation or that Defendant Miners was on notice of prior similar conduct by Defendant Walker.  (ECF No. 12, at 12).  Plaintiff objects, arguing that Defendant Walker had "patterns of abuse to inmates" and that Defendant Miners "had knowledge, notice, and was aware of [Defendant Walker's] conduct or actions" because Plaintiff filed a written complaint and verbally expressed his concerns to Defendant Miners.  (ECF No. 16, at 4).  The Court finds Plaintiff's objections specific and will conduct a *de novo* review.

The Court finds that Plaintiff does not allege any facts supporting his claim that Defendant Walker engaged in a pattern of abuse, other than the single incident alleged in Claim Two. Consequently, the Court finds that Plaintiff failed to plausibly allege that Defendant Miners failed to supervise or train Defendant Walker specifically.  However, the Court notes that it found above that Plaintiff alleged enough, for now, to show that Defendants Walker, Hodge, and Dedmon engaged in a pattern of placing him in segregation without due process and in retaliation, and that Defendant Miners was aware of that activity as a whole.  Accordingly, as stated above, Plaintiff's general claim against Defendant Miners for failure to supervise the prison officials should proceed.

Judge Comstock next recommends that Plaintiff's individual capacity claims in Claim Two against Defendant Walker should proceed in part and be dismissed in part. *Id.* at 12-14. Judge Comstock recommends that Plaintiff's claim that Defendant Walker placed him in segregated confinement in retaliation for Plaintiff's speech proceed, and that his claim that the conditions in the segregation cell were unconstitutional be dismissed. *Id.* The Court will conduct a clear error review of Judge Comstock's recommendations because Plaintiff does not object to either recommendation. Upon review, finding no clear error on the face of the record and Judge Comstock's reasoning sound, the Court adopts Judge Comstock's recommendations on Plaintiff's individual capacity claims against Defendant Walker. Accordingly, Plaintiff's claim that Defendant Walker retaliated against him for exercising his First Amendment rights may proceed, and Plaintiff's conditions-of-confinement claim against Defendant Walker is dismissed.

### 2. Official Capacity Claims

Judge Comstock recommends that Plaintiff's official capacity claims for Claim Two against Defendants Walker and Miners be dismissed because Plaintiff cannot obtain retroactive relief for the June 2024 incident and because Plaintiff is no longer housed in segregated confinement exposed to the allegedly unconstitutional conditions. (ECF No. 16, at 14-15); *see Fond du Lac Band of Chippewa Indians*, 68 F.3d at 255; *see also 381 Care Comm.*, 638 F.3d at 632. The Court reviews Judge Comstock's recommendation for clear error because Plaintiff does not address this recommendation in his objections. Upon review, finding no clear error on the face of the record and Judge Comstock's reasoning sound, the Court adopts Judge Comstock's recommendation that Plaintiff's official capacity claims against Defendants Walker and Miners for Claim Two be dismissed.

### D. Claim Three

Plaintiff asserts his third claim against Defendants Dedmon, DHC, and Miners in both their individual and official capacities. Plaintiff alleges that on August 24, 2024, he was standing in line after lunch while waiting to go back to his floor with the rest of the residents. (ECF No. 11, at 15). Plaintiff alleges that he and the other residents stopped due to miscommunication from prison officers. *Id.* He alleges that Defendant Dedmon "came down [the] hall only targeting" Plaintiff and became "loud and disrespectful" toward him. *Id.* Plaintiff claims that he asked why Defendant Dedmon is "always coming at him sideways" and explained that he felt that she had been targeting him ever since she got him fired from the law library for working on his legal cases. *Id.* Plaintiff alleges that Dedmon ordered Plaintiff to be put in segregation and included false information in her report on the incident. *Id.* at 15, 18). Plaintiff claims that Defendant DHC failed to properly investigate the incident, finding him "not guilty" for not obeying staff orders but "guilty of something that never happened." [4] *Id.* at 18.

### 1. Individual Capacity Claims

Judge Comstock first recommends that Plaintiff's individual capacity claims against Defendant Miners be dismissed for the same reasons as in Plaintiff's Second Claim. (ECF No. 12, at 15). Plaintiff objects, stating without supporting facts that Defendant Dedmon "has patterns of abuse to inmates" and that he informed Defendant Miners of this abuse. (ECF No. 16, at 5). The Court reviews this issue *de novo* and finds that Plaintiff's individual capacity claim against Defendant Miners for Claim Three be dismissed for the same reasons stated in Claim Two.

Judge Comstock next recommends that Plaintiff's individual capacity claims against Defendant Dedmon be dismissed in part and proceed in part. Judge Comstock recommends that

---

[4] As noted above, the Court finds that Defendant's official capacity claims against DHC should be dismissed and will not discuss them here.

14

Plaintiff's claim that the conditions of the segregation cell were unconstitutional be dismissed because he asserts no facts establishing that Defendant Dedmon was personally responsible for those conditions. (ECF No. 12, at 15). Judge Comstock next recommends that Plaintiff's claim that Defendant Dedmon violated his constitutional rights by placing him in segregation without due process should proceed. *Id.* Plaintiff does not specifically object to Judge Comstock's recommendations or allege that Defendant Dedmon was personally responsible for or aware of the conditions in the segregation cell. Accordingly, the Court reviews Judge Comstock's recommendation on this issue for clear error. Upon review, the Court finds no clear error on the face of the record or in Judge Comstock's reasoning and adopts Judge Comstock's recommendations.

### 2. Official Capacity Claims

The Court notes that Judge Comstock did not address Plaintiff's official capacity claims for Claim Three. Plaintiff is barred from asserting an official capacity claim for money damages against Defendant Dedmon, who is alleged to be an agent of the State of Arkansas. *See Will*, 491 U.S. at 71 ("Neither a state nor its officials acting in their official capacities are 'persons' under § 1983" when sued for money damages.). However, the ex parte Young immunity exception "recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." *Fond du Lac Band of Chippewa Indians*, 68 F.3d at 255. Under the ex parte Young doctrine, "a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Comm.*, 638 F.3d at 632. To determine whether this exception applies, the Court must consider "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (quoting *Verizon Maryland, Inc. v. Pub.*

*Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)).

The Court finds that Plaintiff does not allege an ongoing violation of federal law to which prospective relief is proper. Plaintiff cannot receive retroactive relief for the August 24, 2024, incident and he does not allege that he remains confined in the segregation cell where he was exposed to the unconstitutional conditions. Accordingly, the Court finds that Plaintiff's official capacity claims against Defendants Dedmon and Miners in Claim Three are dismissed.

### E.  Claim Four

Plaintiff asserts his fourth claim against Defendants Miners and John and Jane Doe Employees of the SWACC Medical Department. (ECF No. 11, at 19). Plaintiff alleges that he sent a medical request for treatment for a urinary tract infection ("UTI") on March 25, 2024. *Id.* He alleges that the medical staff sent a response back a few days later requesting more information about his symptoms to confirm his diagnosis. *Id.* Plaintiff alleges that he sent another request on April 6, 2024. *Id.* The response to that request stated that Plaintiff's second request was incomplete because he did not include the reasons he needed to see a nurse or his symptoms. *Id.* Plaintiff alleges that he sent a third request on April 7, 2024, stating that he already informed the medical staff what was wrong in prior grievances. *Id.* at 20. The response to Plaintiff's third request again stated that his request was incomplete. *Id.* Plaintiff alleges that he sent a final request on October 20, 2024, to ask why the medical staff will not test or diagnose him. *Id.* Plaintiff alleges that the response to his October 20 request stated that "a lot of [the medical staff] are only practitioners [who] don't test or diagnose." Plaintiff alleges that the response also stated that the medical staff "look things up on the internet to confirm problems and then send them to [the] head nurse to test or prescribe treatments." *Id.* Plaintiff alleges that the named Defendants denied him medical care by not taking him to the nurse to diagnose and treat his UTI. *Id.*

16

Judge Comstock recommends that Plaintiff's denial of medical care claim be dismissed because Plaintiff does not demonstrate that he suffered from an objectively serious medical need. (ECF No. 12, at 16). Judge Comstock reasons that Plaintiff did not describe any facts about his condition, including his symptoms or whether he had received treatment prior to incarceration. *Id.* In his objections, Plaintiff states that when he was booked into the SWACCC facility, he told the medical department that he "has received treatment for UTI prior to incarceration" due to difficulty urinating. (ECF No. 16, at 6). Plaintiff also explains that he did not want to include detailed information about his symptoms on the medical request kiosk out of "concern of the privacy of client/medical confidentiality." *Id.* at 6-7. Plaintiff also states that "Defendant Miners was responsible for providing [Plaintiff] . . . with constitutionally adequate medical care" while he was housed at SWACCC. *Id.* at 7. The Court finds that Plaintiff's objections are specific and will conduct a *de novo* review of his denial of medical care claim.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a denial of medical care claim, Plaintiff must show that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes both an objective and subjective component. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Plaintiff must demonstrate that: (1) he suffered from objectively serious medical needs; and (2) the prison officials actually knew of but deliberately disregarded those needs. *Id.*

"A medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity

17

for a doctor's attention.'"  *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784-86 (8th Cir. 1997)).  The subjective prong of deliberate indifference requires the defendants to have "recognized that a substantial risk of harm existed and kn[own] that their conduct was inappropriate in light of that risk."  *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021).  To meet the subjective standard, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."  *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

The Court finds that Plaintiff's denial of medical care claim does not pass the objective component.  Plaintiff claims that he told the medical staff upon being booked into SWACCC that he "has received treatment for UTI prior to incarceration" due to difficulty urinating.  (ECF No. 16, at 6).  It is not initially clear whether Plaintiff means that he was treated for UTIs generally in the past or that he received treatment for the same UTI he alleges to have been denied medical care for at SWACCC.  However, the Court assumes Plaintiff's current UTI had not been "diagnosed by a physician as requiring treatment" because he claims that his first medical request was to "get diagnosed" and that he later sent a request to ask a nurse "why they don't test or diagnose."  *See Scott*, 742 F.3d at 340; (ECF Nos. 11, at 20; 16, at 6-7).  Further, the Court finds that Plaintiff's medical need was not "so obvious that even a layperson would easily recognize the necessity for a doctor's attention" because Plaintiff alleges that he did not elaborate on any of his symptoms when asked by medical staff.  *See Scott*, 742 F.3d at 340; (ECF No. 6, at 7).  Accordingly, the Court agrees that Plaintiff's denial of medical care claim should be dismissed.

### F. Claim Five

Plaintiff asserts his fifth claim against Defendants DHC, John and Jane Doe, and Miners in their official and individual capacities. (ECF No. 11, at 22). Plaintiff alleges that on June 11, 2024, July 9, 2024, August 28, 2024, September 5, 2024, and October 31, 2024, he was placed in administrative segregation, where he was subjected to unconstitutional conditions of confinement. *Id.* Many of the conditions Plaintiff alleges in Claim Five overlap with his other claims. For example, Plaintiff alleges that he was in "lockdown 24-hours a day" without a one-hour break to shower, exercise, or use the phone, and was exposed to black mold and asbestos. *Id.* at 22-23. Plaintiff alleges that he did not have toilet paper from August 30, 2024, to September 3, 2024. *Id.* at 22. He also alleges that there was no warm water in the segregation cell showers and that he had to ask staff to turn a valve on and off to use the water in some cells. *Id.* at 23.

Plaintiff claims that he was placed in administrative segregation for "illegitimate reasons," in violation of his due process rights. *Id.* at 22. Specifically, Plaintiff alleges that he was placed in segregation after a hearing for the following illegitimate reasons: (1) on June 7, 2024, for saying "he doesn't clean no one's floors (but his own);" (2) on July 9, 2023, for "not standing in protocol;" and (3) on August 28, 2024, for asking an officer "why they're always targeting him" and stating that he "knows his [First Amendment] rights to ask question[s]." *Id.* Plaintiff claims that DHC would turn "a blind eye overlooking [his] concerns" and place him in "segregation for no real legitimate reason besides punishment." *Id.* at 24.

Judge Comstock recommends that the Court dismiss Claim Five in its entirety. (ECF No. 12, at 17). Judge Comstock first recommends that Plaintiff's claims against Defendant DHC be dismissed without prejudice on sovereign immunity grounds. *Id.* She next recommends that Plaintiff's conditions-of-confinement claim against Defendant Miners and John and Jane Does be

19

dismissed because Plaintiff does not assert any facts showing that they were personally involved in or responsible for those conditions. *Id.* Finally, Judge Comstock recommends that Plaintiff's official capacity claims against Defendants Miners and John and Jane Does be dismissed because Plaintiff asserts no ongoing violation of federal law that prospective, injunctive relief could remedy. *Id.*

In his objections, Plaintiff argues that the DHC is a committee made up of "Asst. Warden Mrs. Scoggins, Ms. Maxwell, Major Walker, Warden Miners, [and] Tina Hodge." (ECF No. 16, at 7). Plaintiff claims that these members are responsible for hearing and making judgments punishing Plaintiff based on false allegations and that these members are "responsible for ongoing violation of federal law" by placing Plaintiff in segregation. *Id.* at 7-8. Plaintiff claims that Defendant Miners, along with the other members of the DHC, have knowledge and notice of the "patterns of conduct" of the DHC. *Id.* at 8. Plaintiff also alleges that all members of the DHC are aware of the conditions of the segregation cells. *Id.* The Court finds that Plaintiff specifically objects to Judge Comstock's recommendations as to his individual capacity claims and will consider those claims *de novo*.

First, the Court agrees with Judge Comstock that Plaintiff is barred from asserting a claim against Defendant DHC itself pursuant to the Eleventh Amendment. It is well settled that the Eleventh Amendment bars Plaintiff's § 1983 claim against states and their entities. *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)). Accordingly, as stated previously, Defendant DHC is immune from suit and all of Plaintiff's claims against it, including Claim Five, are dismissed. Plaintiff appears to argue in his objections that the DHC is made up of several people, including Mrs. Scoggins, Ms. Maxwell, Defendant Walker, Defendant Miners, and Defendant Hodge. (ECF No. 16, at 17). The Court assumes that Plaintiff

20

is identifying Defendants John and Jane Does and will consider his claims against the named DHC members.[5]

### 1.  Individual Capacity Claims

Plaintiff appears to assert two claims in Claim Five: (1) that the named members of the DHC violated his due process rights by placing him in administrative segregation for illegitimate reasons; and (2) that he was exposed to unconstitutional conditions in the segregation cell.

To establish a violation of procedural due process under the Fourteenth Amendment, Plaintiff must show that: (1) he was deprived of a protected liberty or property interest, and, if so, (2) that Defendants denied him the process he was due.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

The Supreme Court held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)."  *Id.* at 222. In *Sandin*, the "inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of the conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id.* at 223 (quoting *Sandin*, 515 U.S. at 484).  "The duration and degree of restrictions bear on whether a change of conditions imposes such a hardship.  *Spann v. Lombardi*, 65 F.4th 987, 992 (8th Cir. 2023) (citing *Sadin*, 515 U.S. at 486).  In the instant case, Plaintiff alleges that he was subjected to 24-hour lockdowns with no break to exercise, shower, or make phone calls while in

---

[5] The Court notes that Mrs. Scoggins and Ms. Maxwell have not been named as Defendants in this suit.

21

segregation.  (ECF No. 11, at 11).

Regardless of whether Plaintiff was deprived of a protected liberty interest, Plaintiff does not allege any facts in Claim Five that the named DHC members denied him the process he was due.  In *Spann v. Lombardi*, the Eighth Circuit held that "a transfer to administrative segregation requires only informal, nonadversary due process procedures."  65 F.4th at 992.  Those procedures include "some notice of the reasons for the inmate's placement . . . and enough time to prepare adequately for the administrative review."  *Id.* (quoting *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012)).  The prisoner must also be "given 'an opportunity to present his views' to a neutral decisionmaker, but is not entitled to a hearing with the inmate present.'"  *Id.* (quoting *Westefer*, 682 F.3d at 685).  "If the prison chooses to hold hearings, inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses."  *Id.*

In Claim Five, Plaintiff alleges that he was placed in segregation without due process following a hearing on three different occasions.  (ECF No. 11, at 22).  He claims that he was placed in segregation for illegitimate reasons because he did not violate prison policy.  *Id.* at 23.  Plaintiff does not, however, allege what happened during those hearings or how the hearing procedures violated his due process rights.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (requiring that a pro se complainant "allege sufficient facts to support the claims advanced.").  Accordingly, the Court finds that Plaintiff's individual capacity due process claim in Claim Five should be dismissed.[6]

Plaintiff's second claim within Claim Five is that he was exposed to unconstitutional conditions of confinement, including black mold and asbestos, in the segregation cell.  (ECF No. 11, at 23).  Plaintiff states in his objections that the DHC members are "well aware" of the

---

[6] The Court notes that Plaintiff sufficiently alleged separate due process and/or retaliation claims against Defendants Walker, Dedmon, and Hodges in Claims Two, Three, and Six.

22

conditions because they "conduct DHC meetings in a segregation room." (ECF No. 16, at 8). Exposure to "mold or another environmental allergen may give rise to unsanitary prison conditions that violate inmates' Eighth Amendment rights." *Thurmond*, 972 F.3d at 1012. However, Plaintiff alleges no facts showing that the DHC members were "deliberately indifferent" to his health or safety. *See Kulkay*, 847 F.3d at 643. "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Id.* (quoting *Young*, 508 F.3d at 873). The Eighth Circuit has "repeatedly held mere negligence or inadvertence does not rise to the level of deliberate indifference." *Id.*

Here, Plaintiff claims only that the DHC members were "aware" of the conditions because they had been to the segregation room. (ECF No. 16, at 8). He does not allege that the members had actual knowledge of the mold or asbestos or that they recognized and willfully overlooked the health risks of the mold and asbestos. *See Kulkay*, 847 F.3d at 644 (finding no deliberate indifference when an inmate alleged that defendants were aware that workshop equipment lacked safety guards in violation of state and federal safety regulations). Accordingly, the Court finds that Plaintiff fails to allege a conditions-of-confinement claim against Defendants John and Jane Does (identified as the DHC members).

### 2. Official Capacity Claims

As stated earlier, Judge Comstock recommends dismissal of Plaintiff's official capacity claims against Claim Five Defendants because he requests relief for past violations and asserts no ongoing violation. (ECF No. 12, at 17). Plaintiff does not address this recommendation in his objections. Accordingly, the Court reviews it for clear error and finds none on the face of the record or in Judge Comstock's reasoning. Accordingly, the Court finds that Plaintiff's official capacity claims for Claim Five should be and are dismissed.

23

### G.  Claim Six

In his sixth and final claim, Plaintiff alleges that Defendant Hodge placed him in solitary for "not standing in protocol," in violation of his due process rights.  (ECF No. 11, at 27).  Plaintiff alleges that on October 24, 2024, Defendant Hodge wrote a false disciplinary charge against Plaintiff in retaliation for filing lawsuits.  *Id.*  Plaintiff claims that Defendant Hodge had been targeting him ever since he worked in the law library and told Defendant Walker "that he's royalty and doesn't clean floors."  *Id.* at 27-28.  Plaintiff also alleges that he wasn't allowed to file complaints or grievances while he was in segregation regarding the conditions of his cell, including ants and feces.  *Id.* at 28.  Plaintiff identifies both Defendants Hodge and Miners in their official and individual capacities. *Id.* at 32.

Judge Comstock recommends that Plaintiff's individual capacity claims against Defendant Miners be dismissed because Plaintiff does not assert any facts establishing that Defendant Miners was personally involved in the decision to place him in segregation or the conditions of the segregation cell or that Defendant Hodge engaged in a pattern of similar unconstitutional conduct of which Defendant Miners was aware.  (ECF No. 12, at 18).  Judge Comstock next recommends that Plaintiff's individual capacity claim against Defendant Hodge for retaliating against Plaintiff by placing him in segregation proceed. *Id.*  Finally, Judge Comstock recommends that Plaintiff's official capacity claims be dismissed because Plaintiff does not claim an ongoing violation of his constitutional rights.  *Id.*

In his objections, Plaintiff claims that Defendant Hodge has exhibited "patterns of abuse to inmates" because she "wrote numerous false reports" about Plaintiff.  (ECF No. 16, at 9).  Plaintiff also claims that Defendant Miners knew about this pattern of misconduct because he tried to file a complaint, which he claims was "lost," and because he informed Defendant Miners both verbally

24

and in writing. *Id.* With his objections, Plaintiff attaches a request for interview form addressed to Defendant Miners in which Plaintiff writes that Defendant Hodge "keeps targeting [him] about some lawsuit" and has made false statements about Plaintiff in front of Defendant Miners. *Id.* at 13.

Plaintiff does not address Judge Comstock's recommendations about his individual capacity claims against Defendant Hodge or his official capacity claims against either Defendant, and the Court finds no clear error in the record or in Judge Comstock's reasoning. Accordingly, the Court finds that Plaintiff's individual capacity claim against Defendant Hodge will proceed, and that his official capacity claims will be dismissed.

The Court finds that Plaintiff specifically objects to Judge Comstock's recommendation to dismiss his individual capacity claim against Defendant Miners only and will review that claim *de novo*. A supervising official who did not directly participate in an alleged constitutional violation is liable for failure to supervise the offending actor if the plaintiff proves that the supervisor: "(1) received notice of a pattern of unconstitutional acts committed by a subordinate[;] and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)). A "single incident, or a series of isolated incidents, is usually insufficient to infer a pattern." *Brewington*, 902 F.3d at 803 (citing *Howard*, 887 F.2d at 138).

The Court finds that Plaintiff's failure to supervise claim against Defendant Miners may proceed at this stage. Plaintiff claims that he informed Defendant Miners that Defendant Hodge "wrote numerous false reports" about him, which included the report to put him in segregation for "not standing in protocol[,]" in retaliation of Plaintiff filing lawsuits. (ECF Nos. 11, at 28; 16, at 9). Further, Plaintiff claims that he verbally expressed and wrote his concerns about Defendant

25

Hodge to Defendant Miners and that Defendant Miners "willfully disregarded" his complaints. (ECF No. 16, at 9). Accordingly, the Court finds that for the purpose of preservice review pursuant to 28 U.S.C. § 1915A(a), Plaintiff's failure to supervise claim against Defendant Miners may proceed.

## III. CONCLUSION

Accordingly, the Court finds that the Report and Recommendation (ECF No. 12) should be and hereby is **ADOPTED IN PART AND DECLINED IN PART**. The Court finds the following:

(1) Plaintiff's official capacity claims against Defendant DHC are **DISMISSED WITHOUT PREJUDICE**.

(2) Plaintiff's official capacity claims for money damages against all Defendants are **DISMISSED WITHOUT PREJUDICE**.

(3) Plaintiff's individual capacity claim against Defendant Miners for failure to supervise Defendants Walker, Dedmon, and Hodges **MAY PROCEED**.

(4) Plaintiff's individual and official capacity claims against Defendant Miners for the alleged unconstitutional conditions of SWACCC, specifically Plaintiff's exposure to black mold, asbestos, and a bug infestation (Claim One) **MAY PROCEED.**

(5) Plaintiff's individual and official capacity claims against Defendant Miners for failing to provide access to the grievance process and for denial of medical care (Claim One) are **DISMISSED WITHOUT PREJUDICE**.

(6) Plaintiff's individual capacity claim that Defendant Miners instructed subordinates to read his legal mail (Claim One) **MAY PROCEED**.

(7) Plaintiff's individual capacity retaliation and due process claims against Defendant

26

Walker (Claim Two) **MAY PROCEED**.

(8) All other claims with respect to Claim Two are **DISMISSED WITHOUT PREJUDICE**.

(9) Plaintiff's individual capacity claim against Defendant Dedmon for retaliating against him by placing him in lockdown on August 24, 2024, (Claim Three) **MAY PROCEED**.

(10) All other claims with respect to Claim Three are **DISMISSED WITHOUT PREJUDICE**.

(11) Plaintiff's Claim Four—alleging a failure to provide constitutionally adequate medical care—is **DISMISSED WITHOUT PREJUDICE**.

(12) All claims with respect to Claim Five are **DISMISSED WITHOUT PREJUDICE**.

(13) Plaintiff's claim against Defendant Hodge in her individual capacity for retaliating against him by placing him in segregation on October 24, 2024, without due process of law (Claim Six) should **PROCEED**.

(14) Plaintiff's official capacity claims in Claim Six are **DISMISSED WITHOUT PREJUDICE**.

(15) Defendants Disciplinary Hearing Committee and John and Jane Doe Employees are **TERMINATED** from this case.

**IT IS SO ORDERED**, this 27th day of March, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Court

27